

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

Brian E. Jeffers,
    Plaintiff,

V.

Case No. 7:20CW00060

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 9 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

John A. Woodson, Nurse J. Jackson,
April Hanley, C.O. Clayton, C.O.
Custer and Other John and Jane Doe
Augusta Correctional Center (ACC)
Correctional Officers, Michael Flam,
Floyd Burton, and Other John and
Jane Doe Augusta Health Officials,
        Defendants.

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983

NOW COMES the above named Plaintiff, and as causes of action against the above named Defendants, pleads the following:

### NATURE OF THE CASE

(1) This action is brought forth by Plaintiff Brian E. Jeffers pursuant to 42 U.S.C. §1983, alleging that defendants violated his Eighth Amendment Right to the U.S. Constitution, to be free from cruel and unusual punishment, and medical malpractice, for which he seeks declaratory, injunctive, compensatory, and punitive relief.

### JURISDICTION

(2) The Court has original jurisdiction over this action under 28 U.S.C. §1331.

### VENUE

(3) The Court has venue of this case under 28 U.S.C. §1391(b).

### EXHAUSTION

(4) Plaintiff Brian E. Jeffers (Jeffers hereinafter) has exhausted all of his

available administrative remedies.

### PARTIES

(5) The Plaintiff, Brian E. Jeffers, was at all relevant times a prisoner and patient being confined at Augusta Correctional Center (ACC), 1821 Estaline Valley Rd., Craigsville, VA. 24430, and also confined at Augusta Health, 78 Medical Center Dr., Fisherville, VA. 22939.

(6) The defendants in this case were at all relevant times as follows: John A. Woodson, the Warden of ACC; April Hanley, ACC's Medical Director; C.O. Clayton, a Correctional Officer (C.O.) at ACC; C.O. Custer, a C.O. at ACC; Other JOhn and Jane Doe C.O.'s at ACC; Michael Flam, a Medical Doctor at Augusta Health (A.H.); FLoyd Burton, a Medical Doctor at A.H.: and Other John and Jane Doe A.H. health Officials.

(7) Each of the above defendants at all relevant times acted under color of state law, directly and/or as agents of the state, and are being sued in their individual and official capacity.

### 1ST SET OF CAUSES OF ACTION: DELIBERATE INDIFFERENCE TO JEFFERS' SERIOUS MEDICAL NEEDS, HEALTH AND SAFETY; AND MAINTAINING AN INADEQUATE MEDICAL CARE SYSTEM.

(8) Acc has, and also had in the year 2018, a water contamination problem which defendants Woodson and Hanley are, and were in the year 2018, well aware of, to the point that ACC provides bottled water to all staff members (free of charge) so that they are not required to drink ACC's water due to its contamination.

(9) On 2-28-18, Jeffers became ill after consuming a large tumbler (22 oz.) of water from the sink of the cell he was confined in at ACC, where he is incarcerated serving a state prison sentence.

(10) Unlike ACC staff members, Jeffers is not only not provided bottled water, he is prohibited from purchasing it. Thus, he is forced to drink ACC's water or die of thirst.

(11) Following the 2-28-18 water consumption, supra (9), Jeffers began to experience a progression of symptoms over a one week span, starting with abdominal pain, dizziness, faint feeling, and vomiting, which progressed to an inabiltiy to pass gas or have a bowel movement, no appetite, and eventually difficulty to even stand.

(12) On 3-7-18, Jeffers requested medical attention, but was denied it, after which he filed an emergency grievance at 3:50 p.m., on 3-7-18. The emergency grievance was answered by Defendant Nurse J. Jackson, who denied Jeffers access to medical attention at that time, despite his description of the aforementioned symptoms, supra (11). Defendant Jackson instead told Jeffers to put in a request for sick call, which was scheduled 3 days later (3-10-18), but he was too ill to walk to the appointment, and no staff came to take him there.

(13) Jeffers slowly recovered over the next week, on his own and with the aid of other prisoners, without any aid from medical staff.

(14) On 5-29-18, however, the same symptoms, supra (11), began to recur, and by 8:15 p.m., Jeffers had pased out. On that same day, 5-29-18, at 9:35 p.m., he was transported to the emergency room of Augusta health, at which he remained hospitalized until 6-4-18.

(15) Jeffers was diagnosed by medical staff at Augusta Health with having contracted a bacterial infection known as "yersiniosis". It is a severely debilitating bacteria, and potentially lethal one, which is usually contracted by the consumption of contaminated water or uncooked pork.

(16) Jeffers does not eat pork, and was actually fasting on 5-29-18 as a part of his participation in Ramadan (Islamic month of fasting), something ACC facilitates, and he was on ACC's pass list as a Ramadan participant.

(17) Defendants Woodson and Hanley are responsible for ensuring that ACC has an adequate medical response, and emergency medical response, system; one which prov-

-ides prompt and adequate medical care all around, but both failed to do so in each case of Jeffers experiencing the symptoms that he did, supra (11) - (14).

(18) Defendants Woodson's and Hanley's failure to ensure ACC's medical system is adequate includes, among other things, their failure to ensure emergency medical requests and/or grievances are not forwarded to or directed to the regular sick call process; their failure to ensure that patients who do not show up for scheduled appointments are actually refusing medical treatment, as opposed to being too ill to appear, or not aware of the appointment because they are listed publicly on a pass list which includes hundreds of other prisoners; and their failure to adequately train ACC's staff and medical staff on the proper response to a prisoner's emergency medical requests and grievances, and failures to appear for medical appointments.

(19) Defendants Woodson and Hanley are aware of these deficiencies in ACC's provision of medical care, supra (12) and (18), and have been aware of them since at least 2-28-18, because these deficiencies have been grieved about to them and they are responsible for monitoring ACC's medical care system and ensuring it is operating up to par. Yet, despite their awareness, they have failed to correct the deficiencies.

(20) Defendants Woodson and Hanley are also responsible for ensuring that ACC is not providing its prisoners drinking water that is dangerous to their health, but both have failed, and continue to fail, to do so.

(21) As a proximate result of defendants Jackson's, Woodson's and Hanley's actions and omissions, as described above, supra (8) - (20), Jeffers' serious medical needs went unmet, his health and safety was jeopardized, he was subjected to an inadequate provision of medical care, an inadequate medical care system, and he suffered a potentially lethal illness, "yersiniosis", the aformentioned complications as a result thereof, and a week of hospitalization and treatment, and the additional pain and suffering detailed below. Jeffers also suffered hospital bills; all in violation of his Eighth Amendment right to the U.S. Constitution.

2ND SET OF CAUSES OF ACTION: EXCESSIVE FORCE; DELIBERATE INDIFFERENCE TO THE RISK OF HARM, AND ACTUAL HARM, TO JEFFERS' HEALTH AND SAFETY; AND MEDICAL MALPRACTICE

(22) ACC and the VA. DOC has a prisoner transportation policy which states "the offender will be in full transportation restraints while out on transportation or during hospital stays."

(23) The policy, supra (22), also states that if a documented medical need exists the Facility Unit Head or Administrative Duty Officer may provide written authorization for an exception, detailing the restraints to be used.

(24) This policy, supra (22) - (23), is sometimes enforced, sometimes not, with exceptions being made at staff members whims.

(25) Defendant Woodson, as the Warden of ACC, is responsible for ACC's security transport policy being used, even during hospital stays, and has upheld its continued use for such puproses as sound ACC/VA. DOC policy.

(26) During Jeffers' seven day hospital stay at A.H., supra (14), he was kept in the aforementioned "full transportation restraints", supra (22), which consisted of him being handcuffed, the handcuffs attached to a waist restraint belt (which further restricts his movement), a black metal box placed over the handcuffs and padlocked to the waist restraint belt, and he was also shackled. These restraints remained on Jeffers, and never removed, during his entire seven day stay at A.H.

(27) The black metal box placed over the handcuffs, supra (26), makes the restraint on a prisoner's wrists even tighter, and it did so to Jeffers wrists, pinching them, cutting into them, causing his wrists to bleed and his hands to swell with excruciating and numbing (pins and needle pricking feeling) pain, diminishing his ability to feel his fingers individually; his hands felt like two painful catchers mitts.

(28) ACC John and Jane Doe C.O.s there to guard Jeffers changed intermittently,

5

and he pleaded with them to loosen, if not remove, the handcuffs, but each of them refused, stated it was nothing they could do because it was a security requirement of the transportation policy; C.O.s. Clayton and Custer were among them.

(29) Neither of the aforementioned ACC C.O.'s, supra (28), sought to obtain approval from the ACC Administrative Duty Officer or facility Unit Head (Defendant Woodson) to have Jeffers' handcuffs loosened or removed, despite the obvious injuries they were causing to him, supra (27).

(30) A.H. Drs. Michael Flam and Floyd Burton also witnessed the injuries the handcuffs were causing Jeffers, supra (27), and/or turned a blind eye thereto, as did many other John and Jane Doe A.H. medical staff, and never sought to have the handcuffs removed or loosened for Jeffers.

(31) One night shift nurse, a Mrs. Hope, and a couple of other nurses did ask the ACC C.O.s to loosen the restraints a couple of times for Jeffers I.V. to be administered, but the C.O.s stated they could not do so without permission, but then never sought permission.

(32) Each of these defendants, supra (29) - (31), watched Jeffers suffer in pain, tortuous pain, and did nothing to relieve him thereof, and made a concerted effort not to document it, or to document as little as possible, because they knew it was wrong and that they were culpable in the wrongdoing.

(33) Moreover, during Jeffers' seven day stay at A.H., supra (14), he was denied basic human needs, including, denial of basic hygiene items such as a toothbrush, soap, and deodorant, the ability to shower or bath himself, or use the toilet properly, causing him to soil himself, to the point that on the fifth day Jeffers was requesting to be returned to ACC and refuse treatment of his condition of yersiniosis; only then was he granted a sponge to partially cleanse himself with one hand, while still handcuffed with the other.

6

(34) ACC C.O.s prohibited Jeffers from having any hygiene items or being able to take care of his basic hygiene needs, stating it was transportation security policy.

(35) Defendant Woodson is aware of the aforementioned treatment that ACC prisoners endure on medical transportation trips and hospital stays, and was aware prior to Jeffers seven day hospitalization at A.H., supra (14), and he has condoned those practices as sound ACC and VA. DOC transportation policy.

(36) Jeffers suffered deep cuts into his wrists, scars and scabs, which were still visible more than ten days later (i.e., after his 6-4-18 return to ACC), and he complained to Defendant Woodson of the treatment he endured by ACC C.O.s during his hospital stay, as described above, supra (25) - (27), and (33) - (34), and Defendant Woodson upheld and condoned the treatment Jeffers endured as sound ACC policy; and, Jeffers continues to suffer nerve damage in his wrists.

(37) Jeffers suffered the treatment and injuries he did as a result of Defendant Woodson's ACC transportation policy, and his failure to ensure that ACC C.O.s are properly trained to make exceptions to that policy when it is casuing the kind of injuries as those caused to Jeffers and is denying a prisoner a basic human need.

(38) The amount of force used against Jeffers to secure him was unnecessary, was excessive, was a wanton infliction of pain, it constituted torture, and was malicious.

(39) At no time during Jeffers' transport to A.H., or stay at A.H., did he disobey any command of the ACC C.O.s, show any kind of agression torward them, or be anything other than compliant with regard to security.

(40) As a proximate result of defendants' Woodson's, Custer's, Flam's, Burton's, and other John and Jane Doe ACC and A.H. staffs' actions and/or omissions, as described above, supra (22) - (39), Jeffers has suffered, and continues to suffer irr-

-reparable injuries, both physical, emotional and mental pain, and debt, in violation of his Eighth Amendment right to the U.S. Constitution, and in violation of Virginia's tort law prohibiting medical malpractice.

## JURY TRIAL DEMAND

(41.) Jeffers demands a trial by jury.

## RELIEF SOUGHT

(42) Jeffers seeks the following relief for the injuries he's suffered, and continues to suffer, physical, emotional, mental, and financial:

    (i) Declaratory Relief declaring defendants to have violated the Eighth Amendment to the U.S. Constitution as regards their treatment of Jeffers;

    (ii) Injunctive Relief enjoining defendants to end their unlawful practices;

    (iii) Compensatory Damages in the amount of $500,000 jointly and severally from each defendant;

    (iv) Punitive Damages in the amount of $500,000 jointly and severally from each defendant;

    (v) All costs, fees, and debt Jeffers has incurred as a result of defendants' actions and/or omissions, and as a result of bringing forth this action;

    (vi) Attorney fees should one appear on Jeffers' behalf.

Dated this __on__ day of __Jan. 21, 2020_____, 2019.

Signed: __Brian Jeffers #1084664__
Brian E. Jeffers, #1084664
Augusta Correctional Center
1821 Estaline Valley Rd.
Craigsville, VA. 24430

Case 7:20-cv-00060-MFU-JCH   Document 1   Filed 01/29/20   Page 9 of 9   Pageid#: 9

Brian E. Jeffers #1084664
Augusta Corr. Center
1821 Estaline Valley RD.
Craigsville, VA. 24430



POSTAGE DUE 1.85

Clerk of Court

U.S. District Court, W.D. VA.
210 Franklin Rd., SW, Ste. #540
Roanoke, VA. 24011-2208