UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

Brian E. Jeffers,
         Plaintiff,

V.

Case No. 7.20CN(oO

John A. Woodson, et al.,
         Defendants.

## MEMORANDUM OF LAW

TO WHOM IT MAY CONCERN: Brian E. Jeffers, the Plaintiff in the attached Civil Rights Complaint Pursuant to 42 U.S.C. §1983, raises claims of cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and medical malpractice under Virginia tort law. Both sets of claims are colorable, as shown below.

## I. CRUEL AND UNUSUAL PUNISHMENT

### §1. WATER CONTAMINATION

Jeffers has alleged that defendant Woodson and other ACC prison officials are aware that ACC's water supply is unsafe for regular consumption, which is why ACC staff are provided fresh bottled water free of charge; however, ACC prisoners are not only not provided any, but are prohibited from buying their own (Comp., ¶¶8-10). He's alleged that ACC's contaminated water made him ill, from which he contracted the water-born illness "yersiniosis", and was hospitalized as a result (Id. ¶¶11-16, 20). He has medical records, which this writer has seen, which confirms the same. Moreover, it is a common practice of prisoners at ACC to boil their water before consumption, something Jeffers was unaware of his first day at ACC, on 2-28-18, the day he first became ill after consuming the water without boiling it.

The U.S. Supreme Court has long held it to be a cruel and unusual punishment to deny a prisoner a "minimal civilized measure of life's necessities", which includes the "deprivation of a single identifiable human need such as food, warmth, or exercise." Wilson V. Seiter, 501 U.S. 294, 304 (1991) (quoting Rhodes V. Chapman, 452 U.S. 337, 347 (1981)). Water is most certainly a minimal civilized measure of life necessity; it is a most basic human need, without which human life cannot be sustained. However, it is no merely water that must be provided, but clean, uncontaminated water. Otherwise, the consumption thereof can be worst than consuming no water, as was the case with Jeffers. Yersiniosis is a potentially fatal illness. Thus, Jeffers Eighth Amendment claim in this regard is viable.

## §2. DENIAL OF MEDICAL CARE

Jeffers has alleged that defendant Jackson denied his request for medical attention after he first became ill from ACC's water, as a result of ACC's inadequate medical protocol for addressing emergency medical grievances; a responsibility which falls on Woodson and Hanley (Comp., ¶¶11-21). Estelle V. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976) is controlling, which holds it to be a cruel and unsual punishment for prison officials to exhibit 'deliberate indifference' to a prisoner's serious medical needs; i.e., to know of and disregard a substantial risk of serious injury, or to know of and disregard a prisoner's serious medical need. See Young V. City of Mt. Ranier, 238 F.3d 567, 575-576 (4th Cir. 2001) (Citing Estelle, Id., holding the same). There is no doubt Jeffers' illness was serious, he was rendered unable to pass a bowel movement, loss of his appetite, abdominal pain, vomiting, dizziness, and difficulty even standing; and, of course, he was later rushed to the emergency room and hospitalized for seven days after the second onset of the same symptoms. This writer has viewed the medical records which confirm the same. Moreover, Jeffers' grievance records also confirm that defendant Jackson was made aware of his initial symtpoms and disregarded them and his plea for medical attent-

2

-ion. Therefore, Jeffers' claim in this regard is also viable.

## §3. <u>EXCESSIVE FORCE/DELIBERATE INDIFFERENCE TO HARM, INTER ALIA</u>

Jeffers has alleged that he was subjected to excessive force, and to deliberate indifference to the harm being caused by the excessive force, as well as a denial of medical treatment for the same (Comp., ¶¶22-40). That excessive force was the use of full "transportation" restraints upon Jeffers during his entire seven day hospital stay, although he was no longer "in transportation" (Id.). It left him bleeding, with deep scars, and with what he believes is permanent nerve damage (Id.). Moreover, he was denied medical attention for the injuries the handcuffs and black metal box were causing to him, and was also denied basic hygienic items, and the ability to properly cleanse himself (Id.). What Jeffers endured was nothing short of torture, and certainly cruel and unusal punishment.

Attached to this Memorandum of Law is this writer's own settlement agreement in a case that involved only 4½ hours of excessively tight handcuff use against him, and which resulted in a settlement of the case for $20,000 (see Attachment #A, Mutual Release and Settlement Agreement in the case of <u>Mustafa-El Ajala V. Tom, et al.</u>; and, see also the Seventh Circuit decision in the case at the appeal stage at <u>Ajala V. Tom</u>, 658 Fed. Appx. 805, 806-07 (7th Cir. 2016)). Moreover, see others: <u>Hanig V. Lee</u>, 414 F.3d 822, 824 (8th Cir. 2005) (award of $153,000 in compensatory damages and $51,692 in attorney fees upheld in case of excessive use of handcuffs during arrest); <u>Robles V. Prince George's County, MD.</u>, 302 F.3d 262, 272 (4th Cir. 2002) (jury award of $647,000 reduced to $240,000 via remittitur, which Robles refused, and was awarded $40,000 on retrial, reduced to $30,000 by exclusion of punitive damages against the municipality, for its officers' handcuffing Robles to a pole for ten minutes); and <u>Hope V. Pelzer</u>, 536 U.S. 730, 737-38, 122 S.Ct. 2508 (2002) (cruel and unusaul punishment to handcuff prisoner to post for 7 hours; and, moreover, to deprive him of water and regular restroom breaks in the process).

3

With regard to the deliberate indifference standard, once again see <u>Young</u>, 238 F.3d at 575-576, Id. See also <u>Farmer V. Brennan</u>, 511 U.S. 825, 828 (1994) ("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). The medical staff who witnessed the same and remained mum, as well as failed to treat his injuries therefrom, engaged in medical malpractice in doing so, cruelly and unusually, which includes not only failure to treat a patient, but an abuse of the patient - something they were complicit in. See <u>Alcoy V. Valley Nursing Homes, Inc.</u>, 272 Va. 37, 42, 630 S.E.2d 301, 303 (2006) ("The term 'malpractice' is defined in code §8.01-581.1 as 'any tort action . . . for personal injuries or wrongful death based on health care rendered or professional services rendered, or which should have been rendered, by a health care provider, to a patient.'").

What Jeffers has described constitutes causes of action for each of the above identified claims; i.e., excessive force, deliberate indifference to the harm caused to him by the excessive force, and medical malpractice on behalf of the Augusta Health staff who permitted such treatment on their premises and failed to treat the injuries resulting therefrom.

CONCLUSION

In light of the above, the pleadings, Jeffers' medical and grievance records, this writer believes Jeffers not only has viable claims, but ones that will result in summary judgment in his favor, or a reasonable settlement. Also, that policy of keeping a prisoner in full transportation restraints during hospital stays has since been found to be abusive, by defendant Woodson no less, and ended.

Date: 10-3-19

Respectfully,

Mustafa-El K.A. Ajala, #1951580

4