IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRIAN E. JEFFERS, | ) | Case No. 7:20-CV-00060 |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN A. WOODSON, et al., | ) | By: Hon. Michael F. Urbanski |
|     Defendants | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

Brian Jeffers, a Virginia inmate proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants Augusta Correctional Center (ACC) Warden John A. Woodson, ACC nurse J. Jackson, ACC Medical Director April Hanley, Correctional Officer Clayton, Correctional Officer Custer, other John and Jane Doe correctional officers, Michael Flam, M.D., Floyd Burton, M.D., and other John and Jane Doe health officials violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. Defendant Dr. Flam filed a motion to dismiss for failure to state a claim on August 17, 2020, to which Jeffers responded on November 6, 2020. ECF Nos. 25 and 40. For the reasons discussed below, the motion to dismiss is **GRANTED** and Jeffers's claims against Dr. Flam are **DISMISSED without prejudice**.[1] Because Jeffers is proceeding pro se and potentially could add additional facts sufficient to state a claim against Dr. Flam, the court will allow him to file a separate amended complaint **against Dr. Flam only**. If Jeffers wants to amend his complaint against Dr. Flam, he shall have thirty days after entry of the accompanying order.

---

[1] Defendants April Hanley, J. Jackson, Correctional Officer Clayton, Correctional Officer Custer, and John A. Woodson have pending summary judgment motions. See ECF Nos. 33, 37, and 52. The court will address these pending motions at a later date.

1

## I. Background

Jeffers is incarcerated at ACC. On February 28, 2018, Jeffers became ill after consuming 22 ounces of water from the sink of his cell. Compl., ECF No. 1 at 2. Over the course of the next week, Jeffers experienced "abdominal pain, dizziness, faint feeling, and vomiting, which progressed to an inability to pass gas or have a bowel movement, no appetite, and eventually difficulty to even stand." Id. at 3. On March 7, 2018, Jeffers requested emergency medical attention, which was denied. Id. Jeffers was told to request sick call, which was scheduled three days later, but Jeffers could not attend because "he was too ill to walk to the appointment." Id. Jeffers recovered from this illness without any medical attention. Id.

On May 29, 2018, Jeffers started to experience the same symptoms as he had during his February illness. Id. Jeffers passed out and was transported to the emergency room (ER) of Augusta Health. Id. Jeffers was diagnosed with yersiniosis, which is a bacterial infection. Id. Jeffers asserts that the infection was a result of consuming contaminated water at ACC. Id. at 2–3. Jeffers remained at Augusta Health until June 4, 2018. Id. at 3.

While at Augusta Health, Jeffers remained in full transportation restraints pursuant to Virginia Department of Corrections (VDOC) policy. Id. at 5. If a documented medical need exists, the Facility Unit Head or Administrative Duty Officer may provide written authorization for an exception to the requirement of full transportation restraints. Id. Jeffers asserts that the restraint policy "is sometimes enforced, sometimes not, with exceptions being made at staff members['] whims." Id. During Jeffers's entire stay at the hospital, he was kept in full transportation restraints, "which consisted of him being handcuffed, the handcuffs attached to a waist restraint belt (which further restrict[ed] his movement), a black metal box placed over the handcuffs and padlocked to the waist restraint belt, and he was also shackled."

Id. Jeffers states the metal box made his restraints on his wrists even tighter, "pinching them, cutting into them, causing his wrists to bleed and his hands to swell with excruciating and numbing (pins and needles pricking feeling) pain, diminishing his ability to feel his fingers individually." Id.

Jeffers asked several correctional officers to loosen or remove his handcuffs, but they all refused. Id. at 6. Jeffers does not believe that any of the correctional officers sought written authorization to have his handcuffs loosened or removed. Id. Several nurses asked for the handcuffs to be loosened to administer Jeffers's IV, but the correctional officers denied the requests and did not seek permission to make an exception. Id.

Jeffers alleges that Dr. Flam and the other defendants "turned a blind eye" and "watched Jeffers suffer in pain, tortuous pain, and did nothing to relieve him thereof, and made a concerted effort not to document it, or to document as little as possible, because they knew it was wrong and that they were culpable in the wrongdoing." Id. Jeffers had visible cuts, scars, and scabs on his wrists after leaving Augusta Health and continues to suffer nerve damage in his wrists. Id. at 7.

Liberally construed,[2] Jeffers's complaint alleges that Dr. Flam violated his Eighth Amendment rights by (i) using excessive force in the form of handcuffs restraining Jeffers while at Augusta Health and (ii) being deliberately indifferent to the pain and injuries the handcuffs caused Jeffers while at Augusta Health. Jeffers's complaint also alleges that Dr. Flam's action and/or inaction violated Virginia's tort law prohibiting medical malpractice. Jeffers seeks (i) declaratory relief declaring defendants have violated the Eighth Amendment;

---

[2] Jeffers is proceeding pro se and, thus, entitled to a liberal construction of the pleading. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007).

(ii) injunctive relief enjoining defendants to end their unlawful practices; (iii) compensatory damages in the amount of $500,000 jointly and severally from each defendant; (iv) punitive damages in the amount of $500,000 jointly and severally from each defendant; (v) all costs, fees, and debt Jeffers has incurred as a result of defendants' actions and/or inactions and as a result of bringing forth this action; and (vi) attorney fees should one appear on Jeffers's behalf.

In his motion to dismiss, defendant Dr. Flam argues that Jeffers failed to establish a claim of excessive force, deliberate indifference, or medical malpractice because Dr. Flam did not create or enforce the policy to handcuff Jeffers, had no authority to disregard the policy, and any of his requests to remove or loosen the handcuffs would have been denied, as evidenced by the unsuccessful requests of several nurses at Augusta Health to remove or loosen the handcuffs. Dr. Flam also asserts that he was not acting under color of state law.

## II. Discussion

### A. Motion to Dismiss

Defendant Dr. Flam moves for dismissal of Jeffers's claims against him. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

4

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept as true "'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" Richardson v. Shapiro, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196–197 (4th Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts supporting the allegation); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting Iqbal, 556 U.S. at 679)).

**B. Liability under 42 U.S.C. § 1983**

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998); See also Conner v. Donnelly, 42 F.3d

220, 223 (4th Cir. 1995). "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondent superior has no application under [§ 1983]." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

### 1. Acting Under Color of State Law

As noted, Dr. Flam argues that he did not act under color of state law and that the § 1983 claim against him must be dismissed on this basis. The Fourth Circuit has held that a private physician without any contractual or employment obligation with the state nonetheless acts under the color of state law by voluntarily accepting a referral to treat a prisoner. Conner, 42 F.3d at 223. In so holding, however, the Conner court specifically distinguished a case where there was emergency care provided by a private entity. Id. at 228 (discussing McIlwain v. Prince William Hosp., 774 F. Supp. 986 (E.D. Va. 1991)). The Conner court said the following as to McIlwain:

> We also distinguish the holding of the district court in McIlwain v. Prince William Hospital, 774 F. Supp. 986, 989–90 (E.D. Va. 1991), that the hospital did not act under color of state law in treating a prisoner rushed to the hospital for emergency care. The district court noted that "[b]y seeking emergency treatment for McIlwain [the prisoner], the prison did not delegate its duty to provide him with medical care; the Hospital, in admitting McIlwain to its emergency room, did not accept any such duty." Id. at 989. Although we question the court's conclusion that the prison did not delegate its constitutional obligation to the hospital, we agree that the hospital did not accept such a duty. This fact distinguishes the case from [West v. Atkins, 487 U.S. 42 (1988)], in which the Court specifically noted that the prison bore an obligation to provide adequate medical care to the prisoner, that the prison delegated its obligation to the physician, and that

6

> the physician voluntarily assumed that obligation. West, 487 U.S. at 56, 108 S. Ct. at 2259.
>
> Because this issue is not before this Court, we do not decide today whether evidence that a physician did not voluntarily accept a state's delegation of constitutional duties should affect a court's state action analysis. We merely state that the holding in McIlwain is not inconsistent with our decision in this case.

Conner, 42 F.3d at 228.

Lower courts have addressed the question left unanswered in Conner, with differing results. Some courts within this Circuit and elsewhere have held that a private hospital's emergency room physician does not act under color of state law in treating a prisoner brought into the ER. See, e.g., Smith v. Thornton, No. 5:17-CT-03045-D, 2019 WL 1009439, at *3 (E.D.N.C. Feb. 7, 2019) (holding that an emergency room physician did not act under color of state law in treating a prisoner brought into the ER), report and recommendation adopted, No. 5:17-CT-3045-D, 2019 WL 1003633 (E.D.N.C. Feb. 28, 2019); Humphrey v. Howard, No. 5:17-CT-03123-D, 2018 WL 4137071, at *2 (E.D.N.C. Feb. 14, 2018) (same), report and recommendation adopted, No. 5:17-CT-3123-D, 2018 WL 4113344 (E.D.N.C. Aug. 28, 2018); accord Brown v. Pangia, No. 11 CIV. 6048(AT), 2014 WL 2211849, at *3–4 (S.D.N.Y. May 27, 2014); Sykes v. McPhillips, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006).

By contrast, at least one judge of this court has concluded that a private ER physician who treated a prisoner-plaintiff acted under color of state law because in doing so, he "exercise[d] power that was traditionally the exclusive prerogative of the state." Whitten v. Atyia, No. 7:17cv00465, 2019 WL 1430005, at *8 (W.D. Va. Mar. 29, 2019), aff'd, 776 F. App'x 817 (4th Cir. 2019), cert. denied, 140 S. Ct. 939 (2020). The Whitten court nonetheless granted

summary judgment for the physician on the grounds that he was not deliberately indifferent. See id. at *9–10.

This case presents a slightly different factual scenario than mere treatment in the ER. Here, Jeffers was initially treated in the ER, but then admitted to the hospital where he remained for approximately one week. Jeffers and Dr. Flam agree that Dr. Flam was a physician at Augusta Health during Jeffers's stay. Compl., ECF No. 1 at 2; ECF No. 26 at 7. Neither Jeffers nor Dr. Flam provide any context that would help the court determine whether Dr. Flam acted under color of state law, including whether Dr. Flam saw Jeffers at ACC or solely at Augusta Health, and whether Dr. Flam saw Jeffers in the ER or was solely Jeffers's treating physician. But the court finds it unnecessary to resolve the issue of state action in this case. Even if Dr. Flam acted under color of state law, he nonetheless is entitled to have the claims against him dismissed because the pleadings do not state a claim for excessive force and deliberate indifference.[3]

### 2. Excessive Force

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. Whitley v. Albers, 475 U.S. 312, 320 (1986). To succeed on an excessive force claim, a plaintiff must show that the prison official (1) used "nontrivial" force (objective component), Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and (2) acted with "wantonness in the infliction of pain" (subjective component), Whitley, 475 U.S. at 322. In the prison context, analysis of the subjective component "ultimately turns on

---

[3] As the facts are currently alleged, the court finds it unnecessary to resolve the issue of state action in this case. However, if Jeffers files an amended complaint that contains sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), the court may find it necessary to resolve the issue of state action.

whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; See also Wilkins, 559 U.S. at 34.

Here, Jeffers alleges that Dr. Flam used excessive force against him, in violation of the Eighth Amendment. Jeffers cannot, however, state a § 1983 claim merely by asserting the constitutional standard without facts to support it. See Iqbal, 556 U.S. at 679 (finding plaintiff's pleadings insufficient that tender only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement"). As the complaint currently stands, Jeffers simply does not present facts showing that Dr. Flam used any non-trivial force against him. Jeffers does not allege that Dr. Flam was the one to apply the handcuffs to Jeffers or to institute the restraint policy when transporting prisoners. Additionally, Jeffers does not present any evidence that Dr. Flam maliciously or sadistically applied any force to cause harm to Jeffers. Jeffers contends that Dr. Flam ignored the suffering caused by the restraints, but also states that nurses who asked that restraints be loosened were told by the guards that they did not have authority to do that. It is unclear what action Dr. Flam could have taken under the circumstances. Accordingly, Jeffers's claim of excessive force against Dr. Flam is **DISMISSED without prejudice**.

### 3. Deliberate Indifference

"[A] prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth" in Farmer v. Brennan, 511 U.S. 825 (1994). Id.

Under the first prong, plaintiffs must show that the alleged deprivation was "objectively, sufficiently serious.'" Farmer, 511 U.S. at 834. "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" Scinto, 841 F.3d at 225 (quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)). In medical needs cases, plaintiffs must "demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). Injuries that do not require medical treatment, that "subside[] completely within days," or that amount to "temporary discomforts and inconveniences" do not constitute significant or serious injury as required by the Eighth Amendment. Holley v. Johnson, No. 7:08cv00628, 2010 WL 2640328, at *13 (W.D. Va. June 30, 2010).

In this case, Jeffers did not have any diagnosed medical conditions aside from his yersiniosis. Solely for purposes of this opinion, though, the court will assume that Jeffers's

10

injuries, which included his wrists bleeding, his hands swelling "with excruciating and numbing . . . pain," and the development of nerve damage in his wrists, Compl., ECF No. 1 at 5, 7, constituted a serious medical need. But cf. Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (holding that swollen wrists with some bleeding do not constitute a "serious medical need" for Eighth Amendment purposes), abrogation on other grounds recognized by Mosser v. Haney, No. Civ. A. 3:03CV2260-B, 2005 WL 1421440, at *8 (N.D. Tex. June 17, 2005).

Under the second "subjective" prong, "plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). "In conditions of confinement cases, the requisite state of mind is deliberate indifference." Id. Plaintiffs must show that "the official knew of and disregarded an excessive risk to inmate health or safety," or, in other words, "that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and . . . drew that inference." Id. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Id. (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)).

Plaintiffs "can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)). "Similarly, a prison official's failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." Id. "However, even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" Id. (quoting Farmer, 511 U.S. at 844).

11

As the complaint currently stands, the court finds that Jeffers has not shown that Dr. Flam knew of and disregarded an excessive risk to his health and safety. Jeffers repeatedly states that Dr. Flam's inaction in having Jeffers's handcuffs loosened or removed shows Dr. Flam's deliberate indifference. However, Jeffers does not allege that he ever communicated to Dr. Flam that the restraints were hurting his wrists or that Dr. Flam noticed any of Jeffers's injuries from the restraints. Jeffers also presents no evidence that Dr. Flam responded unreasonably to his condition and symptoms as he observed them. See Witt v. Redman, No. 7:17CV00438, 2018 WL 4374218, at *7 (W.D. Va. Sept. 13, 2018) (reasoning that Witt could not prove deliberate indifference because he had not presented evidence that doctors "responded unreasonably to his condition and symptoms as they observed them"). Moreover, as discussed above, based on Jeffers's description of events, it does not appear that Dr. Flam had any authority to remove the restraints. For these reasons, Jeffers's deliberate indifference claim against Dr. Flam is **DISMISSED without prejudice**.

4. **Medical Malpractice**

Jeffers alleges that Dr. Flam's actions or inactions constitute a violation of Virginia's tort law prohibiting medical malpractice. Because the court finds that all of Jeffers's constitutional claims must be dismissed, the court declines to exercise supplemental jurisdiction over any possible medical malpractice claims under state law.[4] See 28 U.S.C. § 1367(c).

---

[4] As the Complaint is currently alleged, the court has dismissed all federal claims against Dr. Flam and declines to exercise supplemental jurisdiction over any state law claims. However, if Jeffers files an amended complaint that contains sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), the court may find it necessary to exercise supplemental jurisdiction over the medical malpractice state law claim.

## III. Conclusion

For the foregoing reasons, the court **GRANTS** defendant Dr. Flam's motion to dismiss, ECF No. 25, and **DISMISSES without prejudice** Jeffers's claims against Dr. Flam. Any amended pleading by Jeffers against Dr. Flam will be due within thirty days of his receipt of the order that will accompany this Memorandum Opinion.

An appropriate order will be entered.

Entered: March 3, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.03 18:19:39 -05'00'

Michael F. Urbanski
Chief United States District Judge